UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| ANTONIO L. STRAZZULLO, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | Case No. 2:24-cv-18 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| CITY OF MORRISTOWN, TENNESSEE, | ) | Magistrate Judge Cynthia R. Wyrick |
| *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

# **MEMORANDUM**

Before the Court is a motion for summary judgment by Defendant the City of Morristown, Tennessee (the "City"), and Defendants Mayor Gary Chesney and Police Chief Roger Overholt in their official capacities. (Doc. 27.) Also before the Court is a motion for summary judgment by Mayor Chesney in his individual capacity. (Doc. 25.) Plaintiff Antonio L. Strazzullo, who is representing himself, did not file a response to either motion.[1]

## I. BACKGROUND[2]

On January 2, 2024, Plaintiff filed a *pro se* complaint for violation of civil rights in the Circuit Court for Hamblen County, Tennessee against the City, Mayor Chesney in his individual capacity and official capacity, and Chief Overholt in his official capacity. (Doc. 1-1 at 1.) On February 2, 2024, Defendants removed the action to this Court. (Doc. 1.)

---

[1] Filings by litigants representing themselves are not held to the same standard as filings by attorneys. *See Simmons v. United States*, 142 S. Ct. 23, 25 (2021). However, litigants who are representing themselves must still comply with the applicable rules of procedure. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

[2] Factual disputes and reasonable inferences regarding the underlying facts are presented in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

According to the complaint, Plaintiff is a "politically active citizen" and journalist who "gather[s] local government information and decimate[s] matters of public concern and media containing information of public interest." (Doc. 1-3 at 6, ¶¶ 11–12.) Mayor Chesney has a Facebook page called "Gary Chesney at City Hall," on which he posts information regarding actions and meetings happening in the City. (*Id.* at 2, ¶ 1.) On December 30, 2022, Plaintiff, commented on one of the Facebook page's posts using the account of "Joann Tree Strazzullo."[3] (*Id.* at 12.)

The comment read, "Gary Chesney is trying to convince the minority of his councilmen to vote next week to no longer allow the citizen to speak at THEIR public meeting. . . ." (*Id.* at 12.) Plaintiff's comment led to a contentious exchange of words between Plaintiff and Mayor Chesney online. (*Id.* at 12–20.) Plaintiff mentioned protesting at Mayor Chesney's house and speaking to a lawyer to potentially sue the City in the comments. (*Id.* at 13–14.) In response, Mayor Chesney said, "I'll let our police chief know about your threats. I think your track record indicates this is necessary." (*Id.* at 12.) Relying on this statement, Plaintiff alleges Mayor Chesney "threatened to conspire with Defendant Chief Roger Overholt to deprive Plaintiff of his [l]iberty, freedom of speech, and the right to petition the Government for redress of grievances" during this exchange. (*Id.* at 2, ¶ 1.)

A few days later on January 3, 2023, Plaintiff attended two City meetings that Mayor Chesney presided over. (*Id.*) During the public comment section at the City council meeting, Plaintiff approached the lectern to make a public statement. (*Id.* at 3, ¶ 1.) Although he stated his first name and that he was a resident of the City, Mayor Chesney "immediately interrupted and

---

[3] It seems likely Plaintiff used this account because his personal account was blocked by the "Gary Chesney at City Hall" Facebook page in 2021. (*See id.* at 7, ¶ 17.)

asked [him] to identify by first name, last name, and address – which the previous two citizens were not required to do." (*Id*.) Chief Overholt and another officer, who were there in attendance, started approaching Plaintiff at the lectern. (*Id*.) Plaintiff alleges he had a discussion with Mayor Chesney and Chief Overholt "regarding them trying to intimidate" him. (*Id*.)

Once again, Mayor Chesney told Plaintiff to give his first and last name, but "[p]rior to being given time to comply," Chief Overholt told Plaintiff that he must leave or be arrested due to Plaintiff's disruption of the meeting. (*Id*.) Although Plaintiff stated his first and last name, Chief Overholt ordered officers to arrest Plaintiff. (*Id*. at 3–4, ¶ 1.) Plaintiff was arrested, charged with, and convicted of disorderly conduct and interfering with a public meeting. (Doc. 25-5 at 6–9.) Plaintiff alleges he was arrested by officers "prior to [Defendant] or any council member asking to have Plaintiff removed and prior to any vote being taken by council to confirm the majority request the presiding officer to ack [sic] as per [t]he City of Morristown 'general guidelines for behavior at a council meeting.'" (Doc. 1-3 at 4, ¶ 1.) After his arrest, Plaintiff alleges he was transported to Morristown Hamblen Hospital to address a prior back injury that was allegedly aggravated during his arrest. (*Id*.)

Plaintiff also claims Mayor Chesney violated his constitutional rights on January 4, 2023. (*Id*.) Mayor Chesney posted a "Council Report" on the "Gary Chesney at City Hall" Facebook page. (*Id*. at 21.) The report indicated that the Council voted to move public commentary on non-agenda items to a pre-agenda meeting room, which was met with unpopularity by some in the community, including Plaintiff. (*Id*.) This report allegedly identified Plaintiff and "portrayed that Plaintiff is known to be threatening and problematic." (*Id.* at 4, ¶ 1.) The report reads in relevant part:

> A fifth man, who refused to give his name and address, became belligerent when informed he would have to comply with speaking rules. . . As his behavior grew

3

> more threatening, police officers removed him. MPD charged the man, later identified as A. Strazullo, with disorderly conduct and disruption of a public meeting. Officials say he has a track record of walking into the offices of county and city employees and videoing their work while questioning their duties.

(*Id*. at 21.) After this, Defendant allegedly blocked Plaintiff "from being able to see and or comment on" the Facebook page. (*Id.* at 10, ¶ 36.)

Plaintiff alleges Mayor Chesney and Chief Overholt "targeted Plaintiff for nothing more than his fully protected speech, his right to disseminate information, and right to redress the City of Morristown." (*Id.* at 4, ¶ 1.) Based on these facts, Plaintiff asserts claims against Defendant for: (1) First Amendment retaliation under 42 U.S.C. § 1983 (*id*. at 7–9) and (2) violations of his First Amendment rights under the United States and Tennessee Constitutions (*id*. at 9–10).

The City, along with Mayor Chesney and Chief Overholt in their official capacities, move for summary judgment, arguing there is no genuine issue of material fact and they are entitled to judgment as a matter of law. (Doc. 27 at 1.) Mayor Chesney in his individual capacity also moves for summary judgment. (Doc. 25.) Plaintiff did not respond or oppose these motions. The motions are now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc*., 253 F.3d 900, 907 (6th Cir. 2001).

4

To survive a motion for summary judgment, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The Court may not make credibility determinations or weigh the evidence in addressing a motion for summary judgment. *Id.* at 255. If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

A court "cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (alteration in original) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). Moreover, the Federal Rules of Civil Procedure "require that the party

5

Case 2:24-cv-00018-CLC-CRW   Document 36   Filed 09/26/25   Page 5 of 18   PageID #: 322

filing a motion for summary judgment 'always bears the burden of demonstrating the absence of a genuine issue as to a material fact.'" *Id.* (quoting *Carver*, 946 F.2d at 454).

### III. DISCUSSION

The City first argues the official capacity claims against Mayor Chesney and Chief Overholt must be dismissed as redundant. (Doc. 28 at 5.) The City second argues the claims against it under § 1983 must be dismissed because Plaintiff has not identified a custom or policy that would justify liability against the City under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (*Id.* at 6.) The City third argues it is entitled to summary judgment on all claims as a matter of law. (*Id.* at 10.) Mayor Chesney, in a separate motion, argues that the claims against him in his individual capacity must be dismissed because he is entitled to qualified immunity, or alternatively, that he is entitled to summary judgment as a matter of law. (Doc. 26 at 5, 13.) The Court will address the arguments in turn.

#### A. Official Capacity Claims

Plaintiff has brought this action against Mayor Chesney and Chief Overholt in their official capacities. Defendants argue that because the City is a named defendant, "[a]ll 'official capacity' claims raised by the Plaintiff are redundant," and therefore must be dismissed. (Doc. 28 at 5.) Defendants are correct.

"[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Courts within the Sixth Circuit typically dismiss official capacity claims as redundant where the relevant local governmental entity is also a party. *Scott v. Tipton Cnty.*, No. 10-2616, 2011 WL 2515976, at *3 (W.D. Tenn. June 22, 2011) (collecting cases); *see also Kemper v. City of Jackson, Tennessee*, No. 1:22-CV-02689, 2025 WL 336211, at *3 (W.D.

6

Tenn. Jan. 24, 2025) ("When the governmental entity is a named defendant, official capacity claims are properly dismissed as redundant.")

Because the City is already a named defendant, the official capacity claims against Mayor Chesney and Chief Overholt will be **DISMISSED** as duplicative.

### B. 42 U.S.C. § 1983–Plaintiff's First Amendment Claims

"Section 1983 creates a cause of action against any person who, acting under color of state law, abridges 'rights, privileges, or immunities secured by the Constitution and laws.'" *Clayton v. Hogan*, No. 3:22-cv-936, 2023 WL 7930052, at *24 (M.D. Tenn. Nov. 16, 2023) (citing 42 U.S.C. § 1983). "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citation omitted). A plaintiff must "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (citation omitted).

For a municipality to be liable for alleged constitutional violations brought under § 1983, a plaintiff must (1) identify a municipal policy or custom; and (2) connect that policy or custom to the municipality that led to the alleged violation of the plaintiffs' constitutional rights. *Jarvis v. Marcum*, 77 F. App'x 308, 310 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) and *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000)). A plaintiff must put forth a policy or custom on the part of the municipality which caused the unconstitutional conduct. *Phillips v. Cassidy*, No. 1:22-cv-239, 2022 WL 4390635, at *2 (E.D. Tenn. Sept. 22, 2022). A plaintiff can make a showing of an illegal policy or custom for purposes of establishing municipal liability by demonstrating:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the

7

Case 2:24-cv-00018-CLC-CRW  Document 36  Filed 09/26/25  Page 7 of 18  PageID #: 324

> existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Liability as to individual state actors is even more limited. The qualified immunity doctrine insulates individual state actors from liability as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials "are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015). To determine whether a government official is entitled to qualified immunity, courts "apply a well-established two-prong test: (1) whether the facts, when taken in the light most favorable to the party asserting the injury, show the [official]'s conduct violated a constitutional right; and (2) whether the right violated was clearly established such that a reasonable official would understand that what he is doing violates that right." *Id.* "These steps may be addressed in any order, and the defendant official need only prevail on one of them to be granted qualified immunity." *Coffey v. Carroll*, 933 F.3d 577, 584 (6th Cir. 2019); *see also Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018).

In considering the liability of the City and Mayor Chesney, the Court first addresses whether Plaintiff sufficiently brings forth evidence of the deprivation of his constitutional rights as required by § 1983.

The First Amendment "protects against retaliation for 'protected conduct,'" including political speech. *Heard v. Landfair*, No. 23-1277, 2024 WL 1252399, at *2 (6th Cir. Jan. 2, 2024); *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021) (citations omitted). To make out a cognizable claim of First Amendment retaliation, a plaintiff must show:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

*Kubala*, 984 F.3d at 1139 (citations omitted). "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998) (citation omitted).

"[R]etaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). The Court of Appeals for the Sixth Circuit has "not found that temporal proximity alone can establish retaliatory motive." *Sanders v. Genesee Cnty.*, No. 22-1596, 2023 WL 4543488, at *6 (6th Cir. July 14, 2023) (citation omitted). But "[t]he temporal proximity between the protected conduct and the adverse action can provide circumstantial evidence of retaliatory motive." *Id*. "Conclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial." *Murray v. Unknown Evert,* 84 F. App'x 553, 556 (6th Cir. 2003) (citation omitted).

Plaintiff's complaint alleges that Defendants restricted his protected speech and retaliated against him for engaging in the speech on three occasions: December 31, 2022, and January 3, 2023, and January 4, 2023.

1. December 31, 2022

On December 30, 2022, Plaintiff, under the account of "Joann Tree Strazzullo," commented on one of the "Gary Chesney at City Hall" Facebook posts and criticized the City Council. (Doc. 1-3 at 12.) This led to a contentious discussion between Plaintiff and Mayor

9

Chesney in the comment section on December 31, 2022. (*Id*. at 12–20.) In these comments, Plaintiff mentioned protesting at Mayor Chesney's house and talking to a lawyer to potentially sue the City. (*Id*. at 13–14.) In response, Mayor Chesney said, "I'll let our police chief know about your threats. I think your track record indicates this is necessary." (*Id*. at 12.) Relying on this statement, Plaintiff alleges Mayor Chesney threatened to conspire with Chief Overholt "to deprive Plaintiff of his [l]iberty, freedom of speech, and the right to petition the Government for redress of grievances." (*Id*. at 2, ¶ 1.)

Defendants argue the claims based on the events happening prior to January 2, 2023 should be dismissed based on the statute of limitations. (Doc. 28 at 10.) Section 1983 does not have its own statute of limitations, so courts look to applicable state law to determine what limitation period applies. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). In Tennessee, "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes," including § 1983, have a one-year limitations period. Tenn. Code Ann. § 28-3-104(a)(1)(B). The accrual of a cause of action under § 1983, however, is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[I]t has been well established that a § 1983 federal civil rights claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Roberson*, 399 F.3d at 794). As the Court of Appeals for the Sixth Circuit has stated:

> A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. In this objective inquiry, courts look to what event should have alerted the typical lay person to protect his or her rights. At that point, the plaintiff has a complete and present cause of action, such that he can file suit and obtain relief.

*Id.* (internal quotation marks and citations omitted).

Plaintiff's complaint was originally filed in state court on January 2, 2024. (Doc. 1-1 at 1.) Plaintiff's first claim arising from Mayor Chesney's Facebook comments accrued on December 31, 2022—the date Mayor Chesney allegedly threatened to conspire with Chief Overholt "to deprive Plaintiff of his [l]iberty, freedom of speech, and the right to petition the Government for redress of grievances." (Doc. 1-3 at 2, ¶ 1.) Thus, the statute of limitations on this claim expired on December 31, 2023, one year later. *See* Tenn. Code Ann. § 28-3-104(a)(1)(B). Because this claim was raised for the first time in the January 2, 2024, complaint, it is time-barred. Plaintiff's claim as to the December 31, 2022, event will be **DISMISSED WITH PREJUDICE** as to all Defendants.

2. January 3, 2023

Plaintiff's next claim arises from the events that happened on January 3, 2023. On January 3, 2023, Plaintiff attended two City meetings over which Mayor Chesney presided. (Doc. 1-3 at 2, ¶ 1.) During the City Council meeting, Plaintiff approached the lectern to make a public statement during the public comment time. (*Id*. at 3, ¶ 1.) Although he stated his first name and that he was a resident of the City, Mayor Chesney "immediately interrupted and asked [him] to identify by first name, last name, and address – which the previous two citizens were not required to do." (*Id*.) Chief Overholt and another officer, who were there in attendance, started approaching Plaintiff at the lectern. (*Id*.) Plaintiff alleges he had a discussion with Mayor Chesney and Chief Overholt "regarding them trying to intimidate" him. (*Id*.)

Mayor Chesney told Plaintiff to give his first and last name again, but "[p]rior to being given time to comply," Chief Overholt told Plaintiff that he must leave or be arrested due to Plaintiff's disruption of the meeting. (*Id*.) Chief Overholt then ordered officers to arrest Plaintiff. (*Id*. at 3–4, ¶ 1.) Plaintiff was arrested, charged with, and convicted of disorderly conduct and

11

Case 2:24-cv-00018-CLC-CRW   Document 36   Filed 09/26/25   Page 11 of 18
PageID #: 328

interfering with a public meeting. (Doc. 25-5 at 6–9.) Plaintiff alleges he was arrested by officers "prior to [Defendant] or any council member asking to have Plaintiff removed and prior to any vote being taken by council to confirm the majority request the presiding officer to ack [sic] as per [t]he City of Morristown 'general guidelines for behavior at a council meeting.'" (Doc. 1-3 at 4, ¶ 1.) Plaintiff alleges Defendants "targeted Plaintiff" and "sought to prevent Plaintiff from exercising his clearly established right to address [t]he City of Morristown and its elected officials during a public comment period." (*Id.*)

Although the type of activity Plaintiff was engaged in is of a sort that may be protected by the First Amendment, "the government's reason" for acting is "what counts." *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016). In the context of retaliatory arrest claims, the Supreme Court has held a retaliatory arrest claim generally fails when there is a showing of probable cause. *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019). "[B]ecause probable cause speaks to the objective reasonableness of an arrest, its absence will—as in retaliatory prosecution cases—generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* at 401–02 (internal citation omitted). For a retaliatory arrest claim to survive then, the plaintiff must "plead and prove the absence of probable cause for the arrest." *Id.* at 402.[4]

---

[4] "Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406 (citation omitted). "[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. The Supreme Court recently revisited this *Nieves* exception and acknowledged that it is "slim" and does not require "virtually identical and identifiable comparators." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (per curiam). The Court need not address the *Nieves* exception here, or whether its use would be barred by the *Heck* doctrine, because it has not been raised by Plaintiff.

12

Case 2:24-cv-00018-CLC-CRW   Document 36   Filed 09/26/25   Page 12 of 18
PageID #: 329

Defendants suggest that summary judgment is appropriate as to this claim because "not only was there probable cause for his arrest, but he was actually convicted beyond a reasonable doubt." (Doc. 26 at 7–8.) "Plaintiff was convicted of the criminal charges brought against him in the subject arrest. Plaintiff did not appeal those convictions. As such, the criminal convictions conclusively establish, as a matter of law, that probable cause existed for his arrest." (Doc. 28 at 11 (citations omitted).) Plaintiff failed to respond to Defendants' arguments.

Plaintiff was indicted and convicted of (1) disrupting a meeting or procession in violation of Tenn. Code Ann. § 39-17-306 and (2) disorderly conduct in violation of Tenn. Code Ann. § 39-17-305. (Doc. 27-4 at 6–9.) "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause. . . ." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). "As *Nieves* makes clear, if there is a showing of probable cause, a retaliatory arrest claim fails." *Hartman v. Thompson*, 931 F.3d 471, 484–85 (6th Cir. 2019). Because Plaintiff has failed to rebut the presence of probable cause here, Plaintiff has not proven a violation of his constitutional rights as required by § 1983. Thus, Defendants are entitled to summary judgment on the merits of the retaliatory arrest claim, and the claim will be **DISMISSED WITH PREJUDICE** as to all Defendants.

3. January 4, 2023

Plaintiff's next claim arises from the events that happened on January 4, 2023. On January 4, 2023, Mayor Chesney posted a "Council Report" on the "Gary Chesney at City Hall" Facebook page. (Doc. 1-3 at 21.) The report indicated that the Council voted to move public commentary on non-agenda items to a pre-agenda meeting room, which was met with unpopularity by some in the community, including Plaintiff. (*Id.*) This report allegedly identified Plaintiff and "portrayed

13

Case 2:24-cv-00018-CLC-CRW  Document 36  Filed 09/26/25  Page 13 of 18
PageID #: 330

that Plaintiff is known to be threatening and problematic." (*Id.* at 4, ¶ 1.) The report reads in relevant part:

> A fifth man, who refused to give his name and address, became belligerent when informed he would have to comply with speaking rules. . . As his behavior grew more threatening, police officers removed him. MPD charged the man, later identified as A. Strazullo, with disorderly conduct and disruption of a public meeting. Officials say he has a track record of walking into the officers of county and city employees and videoing their work while questioning their duties.

(*Id.* at 21.) Defendant also allegedly blocked Plaintiff "from being able to see and or comment on" the Facebook page. (*Id.* at 10, ¶ 36.) Plaintiff argues that this violated his freedom of speech under the First Amendment of the United States Constitution. (*Id.*)

Defendants argue summary judgment is appropriate as to this claim because there was no "state action" by Mayor Chesney. (Doc. 28 at 16.)

In *Lindke v. Freed*, 601 U.S. 187 (2024), the Supreme Court reviewed a case where a plaintiff brought First Amendment claims after a city manager blocked the plaintiff off a Facebook page, preventing him from commenting any criticism of the city. *Id.* at 192–93. In this case, the Supreme Court provided guidance on how to determine whether a government official's posts "about job-related topics on social media" constitute "official or private" speech. *Id.* at 191. The Court acknowledged that whether a state official engaged in state action or acted as a private citizen is particularly difficult in the speech context, because state officials "are also private citizens with their own constitutional rights." *Id.* at 196. So, "if [the city manager] acted in his private capacity when he blocked [the plaintiff] and deleted his comments, he did not violate [the plaintiff's] First Amendment rights—instead, he exercised his own." *Id.* at 197. Distinguishing between "private conduct and state action turns on substance, not labels" in the context of social media communications and, as such, "demands a fact-intensive inquiry." *Id.*

14

The Court then articulated a special test for state action in the social-media context. *Id*. at 198. "Under the Supreme Court's new test, an official's social-media activity counts as state action only if the plaintiff can show that the official (1) 'possessed actual authority to speak on the State's behalf' and (2) 'purported to exercise that authority when he spoke on social media.'" *Lindke v. Freed*, 114 F.4th 812, 816 (6th Cir. 2024) (citing *Lindke*, 601 U.S. at 198).

As to the first prong of the test, Plaintiff must prove three things. *See id*. First, Mayor Chesney's authority to speak for the City "must have been actual, not simply apparent." *See id*. "It doesn't matter whether [Mayor Chesney] acted like he had authority to speak for the government. Nor does it matter whether others thought [Mayor Chesney] had such authority." *See id*. Second, Mayor Chesney's posts "must relate to a specific matter within his portfolio of responsibilities" and pertain to topics within his "bailiwick." *See id*. (citation omitted). "Third, the grant of actual authority must come from one of the sources mentioned in 42 U.S.C. § 1983: "statute, ordinance, regulation, custom, or usage." *Id*. "The first three options are straightforward: they refer to 'written law.'" *Id*. "Custom and usage are a bit harder to pin down. Those terms refer to "'persistent practices of state officials that are so permanent and well settled that they carry the force of law.'" *Id.* at 817 (citations and internal quotations omitted).

As to the second prong of the test, if Mayor Chesney did have authority to speak on the City's behalf, Plaintiff must demonstrate whether he "purported to exercise that authority when he spoke on social media." *See id.* at 818. "[N]ot all posts concerning a public official's job are exercises of state power." *Id*. "[W]hen a state official doesn't purport to exercise his actual authority, he speaks in his private capacity rather than as a state actor." *Id*.

Mayor Chesney created the "Gary Chesney at City Hall" as his own "personal Facebook page that [he] use[s] to communicate with the citizens" of the City." (Doc. 27-2 ¶ 3.) Although

15

this Facebook page might have "look[ed] and function[ed] like an outlet for city updates and citizen concerns," apparent authority is not enough. *See Lindke*, 601 U.S. at 199. The "crucial step" is to determine whether Mayor Chesney had actual authority conferred by the City to "post city updates and register citizen concerns." *Id*. And here, there is no evidence he had that actual authority.

The City Charter states, "[i]t shall be the duty of the mayor to preside at all meetings of the council; to see that all the ordinances of the city are duly enforced, respected and observed within the city; to take an oath of office before entering upon the duties of the same; and to call special sessions of the council when the mayor deems it expedient. The mayor shall be entitled to a vote upon all matters before the council the same as a council member." (Doc. 27-1 at 4.) Rather than the mayor, the city administrator is the "executive head of the city government." (*Id*. at 5.) The city administrator is responsible for "orderly and business-like administration of the city's affairs," (*id*.), and often posts official announcements of the City on the City's official Facebook page. As the City notes, "[t]here is nothing in the Charter of the City of Morristown, Tennessee that assigns that right to speak for the City on social media upon the mayor." (Doc. 28 at 19.) Plaintiff also admits that there are no "documents that specifically authorize [Mayor] Chesney to speak on behalf of the City on Facebook or any other platform." (Doc. 27-4 at 3.)

Although Plaintiff does not raise it, one might make an argument that Mayor Chesney's use of Facebook to communicate with his constituents over his ten years as mayor is such a "deeply embedded 'persistent practice . . . so permanent and well settled' that it is a customary part of the job carrying 'the force of law.'" *See Lindke*, 61 U.S. at 200. Again, however, while it might be customary for the mayor to communicate and update the City as part of his job, that does not mean it is "*actually* part of the job that the [City] entrusted" him to do. *Lindke*, 114 F.4th at 817. Thus,

16

without actual authority, it cannot be said Mayor Chesney is speaking on behalf of the City. *See Fox v. Faison*, No. 3:22-CV-00691, 2025 WL 2406432, at *11 (M.D. Tenn. Aug. 19, 2025) ("A Tennessee state legislator arguably acts in furtherance of his official duties when he engages with his constituents, whether through a town hall meeting or on his Facebook page, but he is not in any sense authorized to speak 'on behalf of the state' when he engages in that activity.") Mayor Chesney's "engagement with his constituents via Facebook or otherwise is not dependent on [City] authority." *See id.* (quoting *Lindke*, 61 U.S. at 198–99 ("By contrast, when the challenged conduct 'entail[s] functions and obligations in no way dependent on state authority,' state action does not exist.")).

Here, Plaintiff admits that there is no evidence that the City approved or endorsed Mayor Chesney's Facebook posts. (Doc. 27-4 at 4.) Mayor Chesney represents that the City has no personal or financial interest in or access to his Facebook page, and "at no time has the City Council authorized [him] to be the official spokesman for the City – either through my personal Facebook page or in any other manner." (Doc. 27-2 at 2, ¶ 6.) Instead, the City maintains its own authorized Facebook page, found at Facebook.com/CityofMorristown. (Doc. 27-3 ¶¶ 4–5.) Rachel Westra, a City employee supervised by the city administrator, is in charge of posting official announcements on the City's page. (*Id*.)

Because Plaintiff cannot satisfy the first prong of the *Lindke* test by showing that Mayor Chesney is authorized, as the mayor, to speak on behalf of the City, he cannot show that Mayor Chesney engaged in state action either by posting on Facebook or by blocking Plaintiff from accessing the private Facebook page. And, even if Mayor Chesney did have actual authority to speak on behalf of the City, Plaintiff cannot satisfy the second prong of the *Lindke* test. Mayor Chesney did not purport to exercise actual authority on his private Facebook post because it

17

Case 2:24-cv-00018-CLC-CRW        Document 36        Filed 09/26/25        Page 17 of 18
PageID #: 334

contained this disclaimer: (Personal page, not government page). (Doc. 27-2 at 2.) Therefore, because Plaintiff has not shown evidence that his constitutional rights were violated as required under § 1983, the City and Mayor Chesney in his official capacity are entitled to summary judgment on this claim. Plaintiff's claim regarding the Facebook comments and blocking will be **DISMISSED WITH PREJUDICE**.

### C. Violations of the Tennessee Constitution

The complaint further alleges that Defendants' actions violated Article 29 of the Tennessee Constitution. As Defendants point out, however, the Sixth Circuit has held that "Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (citing *Lee v. Ladd,* 834 S.W.2d 323 (Tenn. Ct. App. 1992)). Therefore, Plaintiff's claim under the Tennessee Constitution will also be **DISMISSED WITH PREJUDICE**.

### IV. CONCLUSION

For the foregoing reasons, the motions for summary judgment of the City and Mayor Chesney and Chief Overholt in their official capacities (Doc. 27) and Mayor Chesney in his individual capacity (Doc. 25) will be **GRANTED**. Plaintiff's claims will be **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**